UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J.D. CLARK JONES,<br><br>                Defendant. | Case No. CR22-32-JCC<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

This matter is before the undersigned on the Honorable John C. Coughenour's referral of the government's request for restitution. (*See* dkt. # 37.) The government seeks restitution from Defendant Michael J.D. Clark Jones pursuant to the Mandatory Victim Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, *et seq.* (Gov. Mem. (dkt. # 45).) Mr. Jones filed a memorandum in opposition. (Def.'s Mem. (dkt. # 46).). The Court held a hearing on March 11, 2024, and ordered supplemental briefing from both parties by March 15, 2024. (Dkt. # 47.) On March 12, 2024, Mr. Jones provided a supplemental memorandum. (Def.'s Supp. Mem. (dkt. # 48).) On March 13, 2024, the government filed a supplemental memorandum in response. (Gov. Supp. Mem. (dkt. # 49).) Having considered the parties' submissions, oral argument, the

governing law, and the balance of the record, the Court recommends the government's request for restitution (dkt. # 45) be GRANTED in part and DENIED in part.

## II.     BACKGROUND

In a complaint filed February 24, 2022, Mr. Jones was charged with assaulting victim "Jane Doe" while stealing her car on December 9, 2021. (Dkt. # 1 at 1.) On March 29, 2023, the Court accepted Mr. Jones' plea of guilty, without a plea agreement, to one count of assault with intent to commit robbery, 18 U.S.C. §§ 113(a)(2), 1153(a), and one count of robbery, 18 U.S.C. §§ 2111, 1153(a). (Dkt. ## 28-31.)

The presentence report, filed May 17, 2023, noted "[t]he provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense." (Dkt. # 32 at 4.) At that point, "the victim ha[d] not decided whether to request restitution[.]" (*Id.*) The presentence report further stated that, "[p]ursuant to 18 U.S.C. § 3663A, restitution in an amount to be determined at sentencing shall be ordered in this case. Restitution is due and owing to the victim[.]" (*Id.* at 15.)

On May 24, 2023, a victim impact statement was filed, describing the physical, emotional, and financial damage the victim suffered. (Dkt. # 34.) The victim noted "several thousand dollars in damage to the vehicle"; "medical costs"; and "financial impact" that she "can't easily estimate" because she was "self-employed and needed to stop [her] property management business while [she] recovered." (*Id.* at 3.)

In a sentencing memorandum, the government did not address restitution except to request the Court schedule a restitution hearing "at least forty-five days after the date of the sentencing hearing." (Dkt. # 35 at 1.) Mr. Jones' sentencing memorandum stated "[t]he parties will address restitution at a separate hearing in the future, at which Mr. Jones waives his right to

appear." (Dkt. # 36 at 8.) Mr. Jones represented he had "no present ability to pay restitution, but hopes to develop that ability after his release from prison." (*Id.*)

At the sentencing hearing on June 6, 2023, Mr. Jones' counsel acknowledged the victim had "asked for restitution, which will be addressed at a different hearing." (Dkt. # 42 at 5:5-6.) Judge Coughenour confirmed the parties had no "objection to the restitution question being presented to a magistrate judge[.]" (*Id.* at 5:8-11.) The minutes reflect that Judge Coughenour ordered "[r]estitution to be determined by a Magistrate Judge." (Dkt. # 37.)

The judgment entered by the Court on June 6, 2023, states that the amount of restitution is to be determined. (Dkt. # 38 at 6 ("$ TBD".) No specific date was set for the determination. (*Id.*)

On March 1, 2024, the government filed its restitution memorandum and the Court filed a notice setting the restitution hearing for March 11, 2024. (Dkt. # 44; Gov. Mem.) On March 7, 2024, Mr. Jones filed his restitution memorandum. (Def.'s Mem.)

The undersigned held the restitution hearing on March 11, 2024. (Dkt. # 47.) This Court admitted the government's proposed Exhibit 1. (*See* Gov. Mem., Ex. 1 (dkt. ## 45-1, 45-2).) The government called the victim, E.R., as a witness to testify to her losses due to Mr. Jones' offenses. (Dkt. # 47.) She testified to expenses for vehicle repairs, medical bills, lost income from a rental property, and lost wages, as described in Exhibit 1. (Gov. Mem., Ex. 1.) Mr. Jones was not present but his counsel confirmed his waiver of appearance, presented oral argument, and cross-examined the witness. (Dkt. # 47.)

### III.   DISCUSSION

The government requests the Court order Mr. Jones to pay restitution of $61,797.61 to the victim and her insurers. (Gov. Mem. at 1, 4-5.) Mr. Jones contends the government waived

restitution by failing to timely request it. (Def.'s Mem. at 1.) In the alternative, Mr. Jones contends the lost rental and wage income requests should be denied as speculative. (*Id.* at 6.) If restitution is ordered, Mr. Jones contends the payments required should be nominal based on his economic circumstances. (*Id.* at 7; Def.'s Supp. Mem.)

### A.   Restitution is Not Time Barred

The MVRA requires that, "when sentencing a defendant . . . , the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. § 3663A(a)(1). In the section setting forth the "[p]rocedure for issuance and enforcement of order of restitution[,]" the statute provides that if a victim's losses are not ascertainable prior to sentencing, "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).

The Supreme Court held that the 90-day time limit in § 3664(d)(5) is not jurisdictional, and its expiration does not deprive a court of the power to order restitution. *Dolan v. United States*, 560 U.S. 605, 611 (2010) ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."); *see also United States v. Moreland*, 622 F.3d 1147, 1173 (9th Cir. 2010) ("[B]ecause the procedural requirements of section 3664 were designed to protect victims, not defendants, the failure to comply with them is harmless error absent actual prejudice to the defendant."). Accordingly, "a court that expressly leaves open at the original sentencing hearing a determination of restitution may still order restitution after the MVRA's 90-day deadline, at least when doing so does not prejudice the defendant." *United States v. Harder*, 552 F. Supp. 3d 1144, 1150-51 (D. Or. 2021).

Mr. Jones distinguishes *Dolan* on the grounds that, here, "the Court made no findings that restitution would be awarded." (Def.'s Mem. at 5.) The Court finds Mr. Jones' argument unpersuasive. There was never any dispute that the MVRA applies to the crimes here to make restitution mandatory. In his sentencing memorandum and at the sentencing hearing, counsel made clear that Mr. Jones understood that restitution was mandatory. (*See* dkt. # 36 at 8 (Mr. Jones "has no present ability to pay restitution, but hopes to develop that ability after his release from prison."); dkt. # 42 at 5:5-7 ("the victim has . . . asked for restitution").) The judgment, issued the same day as the sentencing hearing, also indicated restitution would be ordered, with only the amount left to be determined. (*See* dkt. # 38 at 6 ("$ TBD").)

Moreover, courts have held that because the 90-day deadline is not jurisdictional, *Dolan* applies regardless of whether the district court determined before or after the deadline that restitution would be awarded. *See United States v. Monzel*, 746 F. Supp. 2d 76, 82 n.3 (D.D.C. 2010). In *Monzel*, "the Court did not make its decision prior to expiration of the 90-day deadline as to whether an order of restitution would be entered." *Id.* Nevertheless, the Court rejected the defendant's argument that restitution was time-barred, concluding that "[t]he MVRA's time limits are either jurisdictional or they are not; a conclusion that a deadline is not jurisdictional under the facts presented in *Dolan*, but is jurisdictional under the facts presented here would be both illogical and inconsistent." *Id.* Even if the Court here did not determine restitution would be awarded prior to the 90-day deadline, the Court did not lose jurisdiction to make that determination later. Mr. Jones has not made any showing that he was prejudiced by the delay.

This Court concludes restitution is not time-barred. The Court next turns to the amount and scheduling of restitution.

REPORT AND RECOMMENDATION - 5

B.   **Amount of Restitution**

The government provided a spreadsheet summarizing losses along with supporting documentation, authenticated and explained by the victim at the restitution hearing. (Gov. Mem., Ex. 1.) The spreadsheet shows losses of $6,266.52 for vehicle repairs, $2,393.09 in medical expenses, $15,638.00 in lost rental income, and $37,500.00 in lost wages, for a total restitution request of $61,797.61. (*Id.* (dkt. # 45-1) at 1-2.) Mr. Jones challenges the rental and wage losses as speculative. (Def.'s Mem. at 6.)

"The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* "In resolving such a dispute, the district court must rely on 'evidence that possesses sufficient indicia of reliability to support its probable accuracy.'" *United States v. Dadyan*, 76 F.4th 955, 960 (9th Cir. 2023) (quoting *United States v. Anderson*, 741 F.3d 938, 951-52 (9th Cir. 2013)). "[T]he district court is entitled to draw reasonable inferences when coming to its restitution calculation." *Id.* (citing *United States v. Walter-Eze*, 869 F.3d 891, 914-15 (9th Cir. 2017)).

The Court must "set forth an [adequate] explanation of its reasoning, supported by the record." *United States v. Tsosie*, 639 F.3d 1213, 1223 (9th Cir. 2011) (alteration in original) (quoting *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008)). Nonetheless, "district courts possess 'a degree of flexibility in accounting for a victim's complete losses[.]'" *Id.* (quoting *Waknine*, 543 F.3d at 557).

1.  *Vehicle Repairs*

At the hearing, the victim testified that she was only claiming her $500.00 deductible as a loss. (*See* Gov. Mem., Ex. 1 (dkt. # 45-1) at 1. She also documented losses to her insurance company, American Family Mutual Insurance, of $3,390.57 to reimburse her; $2,362.85[1] paid directly to the auto repairer; and $13.10 for a police report. (*Id.*) These amounts were supported by American Family Mutual Insurance's records. (*See* Gov. Mem., Ex. 1 (dkt. # 45-2) at 9.) Mr. Jones did not challenge the vehicle repair losses. (*See* Def.'s Mem.; dkt. # 47.) This Court finds these losses supported by a preponderance of the evidence.

The Court cannot consider "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance . . . in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). The restitution must be paid directly to the insurance company, "but the restitution order shall provide that all restitution . . . be paid to the victims before any restitution is paid to such a provider of compensation." 18 U.S.C. § 3664(j)(1). Accordingly, this Court recommends that, with regard to vehicle repairs, restitution be ordered in the amount of $500.00 to the victim, and $5,766.52 to American Family Mutual Insurance after all restitution has been paid to the victim.

2.  *Medical Expenses*

The victim testified to, and provided receipts and invoices for, six payments to Evergreen Healthcare totaling $2,054.89. (*See* Gov. Mem., Ex. 1 (dkt. # 45-1) at 1-2; *id.* (dkt. # 45-2) at 1-6.) Mr. Jones did not challenge these amounts, and the Court finds these losses supported by a preponderance of the evidence.

---

[1] Although the spreadsheet lists $2,462.95, this appears to be a typographical error as the supporting documentation shows $2,362.85. (*See* Gov. Mem., Ex. 1 (dkt. # 45-2) at 9.)

REPORT AND RECOMMENDATION - 7

The victim also testified to two payments to Queen Anne Medical Association, totaling $338.20, that she testified were reflected in credit card statements. (*See* Gov. Mem., Ex. 1 (dkt. # 45-1) at 1.) No supporting documentation was provided, however. This Court finds these losses unsupported.

### 3. Rental Income

The victim testified she suffered losses to rental income because her injuries from Mr. Jones' assault made it more difficult to clean and prepare the property between bookings. (*See* dkt. # 47.) Immediately after the assault, her family helped her prepare for bookings that could not be canceled, but she shut down new bookings from approximately February 17, 2022, to March 4, 2022, and again from approximately August 8, 2022, to November 24, 2022. (*See* Gov. Mem., Ex. 1 (dkt. # 45-2) at 7-8.) To estimate the losses from this approximately four-month period, she provided documents from Airbnb showing her property had an average nightly rate of $219.00 for the period from June 2022 to June 2023, and an average occupancy rate of 85.8%. (*See id.* at 10.) Thus, the average earning for four 30-day months, minus the 30% in taxes and fees Airbnb collects, totaled approximately $15,638.00. (*Id.* ($219 per day x 85.8% of 30 days per month x 4 months x 70% of gross income).)

Mr. Jones challenges the rental losses as speculative. (Def.'s Mem. at 6.) In his briefing, he argues that "December 2021 through March 2022 coincided with the worst outbreak of the Omicron variant of Covid-19" and thus bookings may have been lower than average. (*Id.*) At the hearing, counsel argued that the period from February to March 2023 did not show earnings on par with the victim's estimates for February to March 2022. (*See* dkt. # 47.)

This Court finds neither of Mr. Jones' arguments persuasive. Precisely because there is variability in rental occupancy and price, taking an average over an entire year is a reasonable

basis to estimate losses. Mr. Jones' argument as to the effect of a particular Covid-19 outbreak on rental income is also highly speculative and unsupported by any evidence. This Court rejects Mr. Jones' argument that only "evidence that there were people attempting to reserve the home" would suffice. (Def.'s Mem. at 6.) There is no way to obtain such evidence because the property was closed for bookings.

This Court finds the victim's estimate of $15,638.00 in rental income losses is based on reasonable inferences, and recommends this amount be included in the restitution ordered. *See Dadyan*, 76 F.4th at 960.

### 4. Wage Losses

The victim testified that, before the assault, she was building a start-up business and had to cease all related activities from the December 2021 assault through mid-March 2022. (*See* dkt. # 47; *see also* Gov. Mem., Ex. 1 (dkt. # 45-2) at 12.) She acknowledged that the start-up was not yet producing income for her, but estimated the lost income based on government statistics reflecting earnings of people with her experience and educational background. (*Id.*) Based on a salary of $150,000.00 per year, she estimated the roughly three months' lost wages at $37,500.00. (*See* Gov. Mem., Ex. 1 (dkt. # 45-1) at 2.) Her actual income at her job prior to the start-up was well over $200,000.00 per year. (*See* dkt. # 47.)

Mr. Jones challenges the wage losses as speculative. (Def.'s Mem. at 6.) The Court agrees. Even now, two years after returning to work on it, the start-up is not yet paying the victim an income. While this Court acknowledges the loss of productive time, the government has not produced evidence with "sufficient indicia of reliability" to enable calculation of the value of the loss. *Dadyan*, 76 F.4th at 960. Accordingly, this Court recommends restitution be denied for wage losses.

REPORT AND RECOMMENDATION - 9

        5.       *Total Restitution*

This Court recommends restitution be ordered to the victim as follows:

| | |
|---|---|
| Vehicle repairs | $500.00 |
| Medical expenses | $2,054.89 |
| Rental income loss | $15,638.00 |
| TOTAL | $18,192.89 |

This Court further recommends restitution to American Family Mutual Insurance in the amount of $5,766.52 for vehicle repairs, to be paid after restitution has been paid to the victim.

    **C.**    **Schedule of Payments**

Mr. Jones contends payments should be nominal because he owes child support to three children; he lacks assets and work history; and his only income is a "per capita" that he receives from the Tulalip Tribes, which is controlled by his mother while he is incarcerated. (Def.'s Supp. Mem. at 2.) Mr. Jones includes a screenshot, provided by his mother, of a recent per capita deposit showing two numbers: $555.00 and $665.85. (*Id.*) It is unclear whether these are two deposits, a deposit and the resulting balance, or something else. Mr. Jones argues the screenshot shows his "projected income is less than $700 monthly[.]" (*Id.* at 3.) Mr. Jones further contends that, because the Court in its judgment found he was unable to pay a fine, he is also unable to pay restitution. (*Id.* at 1-2.)

The government contends the Court's finding of Mr. Jones' inability to pay a fine does not mean he cannot pay restitution. (Gov. Supp. Mem. at 2.) The government further argues that the screenshot deposit does not establish Mr. Jones' monthly income as the deposit could, for example, be biweekly. (*Id.*) Finally, the government notes the Court's judgment sets a payment schedule, which should be preserved. (*Id.* at 2-3.)

After determining the amount of restitution owed, the Court must specify the manner and schedule for the restitution to be paid, "pursuant to section 3572" and considering "the financial

REPORT AND RECOMMENDATION - 10

resources and other assets of the defendant"; "projected earnings and other income of the defendant"; and "any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." 18 U.S.C. § 3664(e). Under § 3572, restitution is due "immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). The payment schedule must provide "the shortest time in which full payment can reasonably be made." 18 U.S.C. § 3572(d)(2).

In the "Criminal Monetary Penalties" section of the judgment, the Court imposed an assessment of $200, restitution in an amount to be determined, and waived a fine because the Court found Mr. Jones was "financially unable and . . . unlikely to become able to pay a fine[.]" (Dkt. # 38 at 6.) In the "Schedule of Payments" section, the Court made payment "due immediately," with any unpaid amount collected as follows: (1) during the period of imprisonment at 25% of his inmate gross monthly income or $25.00 per quarter, whichever is greater; and (2) during the period of supervised release, in monthly installments of at least 10% of his gross monthly household income, beginning 30 days after release from imprisonment. (*Id.* at 7.) The Court further noted the payment schedule was "the minimum amount that the defendant is expected to pay towards the monetary penalties imposed by the Court" and ordered Mr. Jones to "pay more than the amount established whenever possible." (*Id.*) Mr. Jones was ordered to notify the Court and the government "of any material change in the defendant's financial circumstances that might affect the ability to pay restitution." (*Id.*)

This Court concludes Mr. Jones has not established any authority to disturb the Court's payment schedule as set forth in the judgment. The Court's judgment provides for payments

REPORT AND RECOMMENDATION - 11

based on Mr. Jones' income. Accordingly, the amount due will be commensurate with his ability to pay, regardless of whether the deposit amount shown in the screenshot Mr. Jones provided is monthly or more frequently.

### IV. CONCLUSION

For the foregoing reasons, this Court recommends the government's request for restitution (dkt. # 45) be GRANTED in part and DENIED in part. The Court recommends Mr. Jones be ordered to pay restitution in the amount of $23,959.41, specifically:

(1)   $18,192.89 to the victim, E.R.; and

(2)   $5,766.52 to American Family Mutual Insurance, after the victim has received full restitution;

The Clerk is directed to send copies of this order to the parties and to Judge Coughenour.

Dated this 15th day of March, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge